IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRYSTAL R. KEIDERLING | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 07-2237 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER S. J.                                                                                           May 20, 2008

  Currently before the Court are the Objections of Defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"), to the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey. For the reasons set forth below, the Objections are sustained in part and overruled in part.

**I.   PROCEDURAL HISTORY**

  On February 9, 2005, Plaintiff Crystal R. Keiderling, then twenty-three years old, applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI respectively of the Social Security Act, 42 U.S.C. § 301, et seq. ®. 42-44, 56.) In her application, she alleged disability since January 24, 2005, due to panic attacks, anxiety, depression and social phobia. (Id. at 42, 48.) The state agency denied her claim on April 25, 2005, after which Plaintiff requested review by an administrative law judge ("ALJ"). (Id. at 22-26.) An administrative hearing was held before ALJ George C. Yatron, who denied benefits in a decision dated December 22, 2006. (Id. at 12-18, 242-70.) The Appeals Council dismissed Plaintiff's request for review on April 4, 2007, and Plaintiff thereafter initiated a civil action in this Court on

June 4, 2007.  (Id. at 5-7.)  Upon consideration of the record, United States Magistrate Judge Elizabeth T. Hey filed a Report and Recommendation ("REPORT AND RECOMMENDATION"), dated April 2, 2008, suggesting that the case be remanded for further consideration of (1) Plaintiff's level of social functioning; (2) the weight to be assigned to Plaintiff's psychotherapist Jamie Bongiovi; (3) the level of Plaintiff's impairment in concentration; (4) the impact of Plaintiff's head tremors; and (5) Plaintiff's diagnosis of post-traumatic stress disorder.  Having engaged in a thorough review of the objections, the Magistrate Judge's REPORT AND RECOMMENDATION and the various briefing by the parties, the Court agrees with the ultimate conclusion reached in the REPORT AND RECOMMENDATION, but modifies the precise basis for that remand.

II.     **STANDARD OF REVIEW OF A REPORT AND RECOMMENDATION**[1]

When a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de novo* review of the issues raised on objection. 28 U.S.C. § 636(b)(1) (2005); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  In so doing, the Court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1).  The Court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations.  See United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406, 2413 (1980).

III.    **DISCUSSION**

    A.    **Whether the REPORT AND RECOMMENDATION Properly Ordered Reconsideration of Plaintiff's Social Functioning**

The Commissioner's first objection challenges the Magistrate Judge's recommendation that

---

[1] The medical record, ALJ's findings, legal framework for assessing a disability claim and standard of review of an administrative decision were properly summarized by the Magistrate Judge.  Accordingly, the Court incorporates them by reference into this opinion.

the case be remanded, in part, for reconsideration of the degree of limitation on Plaintiff's social functioning.[2] In his decision, the ALJ imposed on Plaintiff only a mild limitation in this area, reasoning as follows:

> While [Plaintiff] complains of a social phobia, she has been able to hold a job in the past, albeit with minimal interaction, but also admits that she had a handful of people at work with whom she talked. It is also noted that by her own account she stopped working, not because of her alleged extreme symptoms, but rather as a result of a "sexual assault" at work. The undersigned finds that even giving credence to her allegations of social phobia, she would still be capable of performing work functions in an environment that did not require frequent interaction with the public and the performance of more than simple and routine work tasks.

®. 16.) The Magistrate Judge disagreed, concluding that although Plaintiff was not impaired in social functioning to the extreme described by her testimony and written narrative, the ALJ's conclusion that Plaintiff suffered from only mild difficulties in this area was not supported by substantial evidence. (REPORT AND RECOMMENDATION 12.) The Commissioner now objects to this portion of the REPORT AND RECOMMENDATION on the grounds that (1) the evidence of record supported the ALJ's finding and (2) in any event, remand would serve no

---

[2] Social functioning refers to a claimant's,

> capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. [A claimant] may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. [A claimant] may exhibit strength in social functioning by such things as [his/her] ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. [The Commissioner] also need[s] to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.

purpose.

The Court does not find either of the Commissioner's arguments convincing.  First, we agree with the Magistrate Judge that the record does not contain substantial evidence to support the ALJ's finding of a mild limitation.  As aptly noted in the REPORT AND RECOMMENDATION, every doctor to opine on the extent of Plaintiff's limitation in social functioning imposed at least moderate restrictions.  (REPORT AND RECOMMENDATION 13.)  Dr. Clova Walters, the state consultative examiner, determined that Plaintiff exhibited socially isolative behavior and had moderate limitations on her abilities (a) to interact appropriately with the public, co-workers and supervisors, (b) to respond appropriately to work pressures in a work setting and (c) to respond appropriately to changes in a routine work setting.  ®. 128.)  Plaintiff's psychotherapist, Jamie Bongiovi, diagnosed her with social phobia and commented that although Plaintiff could interact with her significant other and her family, she could not interact with people she did not know.  (Id. at 232.)  Finally, Dr. John Barrett, the state agency reviewing physician, diagnosed a moderate limitation in her overall ability to maintain social functioning.  (Id. at 131, 144.)  Contrary to the established jurisprudence, however, the ALJ rejected these assessments without explanation in favor of a mild limitation in this area of functioning.  See  Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (holding that an ALJ may not reject physicians' opinions "due to his or her own credibility judgments, speculation or lay opinion.").

To the extent the ALJ relied on isolated statements from either Plaintiff's testimony or her written report of functioning, his reasoning does not constitute substantial evidence sufficient to support his finding of a mild limitation in social functioning.  First, the ALJ cited Plaintiff's statement that "[t]here were a small handful of people that I talked with and I sort of considered them friends at the time.  But they weren't really."  ®. 77.)  The ALJ's inference that Plaintiff thus had only minimal limits in her social abilities stands in stark contrast to the remainder of Plaintiff's

4

report, wherein she explained that she could not function in public (id. 76); she suffered severe panic attacks when having to work at a job that required her to be near even one or two people (id. at 77); she would tense up, have tremors and suffer a panic attack at her prior job (id. at 76); and "[j]ust knowing that [she] was in a building with other people made [her] jumpy and super cautious and anytime anyone would walk by [she] would be startled." (Id. at 77.) The same holds true for the ALJ's reliance on the fact that Plaintiff left her job due to an alleged sexual assault, not due to her mental health issues. Plaintiff actually indicated that, before the attack, she purposely worked only three days a week to avoid the additional days around people (id. at 78); took a lot of days off of work because she was too depressed to move (id. at 76); spent excessive amounts of time either suffering or recovering from panic attacks (id. 76); drank in order to cope with going to work (id. at 253) and could not keep up with her work. (Id. at 76.) The fact that she ultimately left the job due to the sexual assault does not undermine the obvious social difficulties she experienced during her tenure at that job.[3]

Any additional reasoning supplied by the Commissioner's brief is misplaced for several reasons. First, it is well-established that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;" the Commissioner may not offer a post-hoc rationalization. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). The Commissioner avers that Plaintiff admitted to having a few friends with whom she got along fine, going out with friends once or twice a month, spending the night at friends' houses and getting along with her boyfriend and family. (Def.'s Br. 5.) In so arguing, however, the Commissioner ignores the cumulative import of Plaintiff's statements, wherein she actually indicated that the only time she is around people is if she needs to

---

[3] Notably, it appears that the sexual assault exacerbated her condition ®. 255-56). Indeed, as reflected by treatment notes, she has suffered almost daily anxiety attacks since the sexual assault in December of 2004. (Id. at 125.)

get things at the store ®. 73); she stays at friends' houses only when she has no place else to go, but it is "extremely difficult" (id. at 73); she is afraid of strange people and has panic attacks (id. at 73); she does not interact with neighbors (id. at 73); she gets along with her family but avoids them and stays in her bedroom (id. at 73); she does not participate in activities with relatives and avoids holidays (id. at 74); she has a few friends, but only rarely can go out with them because of her panic attacks and tremors (id. at 73-74); and she will sometimes stay inside for months at a time. (Id. at 74.) In short, the isolated statements cited by the ALJ and the Commissioner do not constitute substantial evidence sufficient to undermine the doctors' reports and testimony reflecting an overall moderate limitation in social functioning.

Alternatively, the Commissioner argues that even in the event Plaintiff has a moderate limitation in social functioning, remand for additional consideration would serve no purpose. The Court also rejects this contention.[4] The increased limitation would impact both the residual functional capacity assessment and the resulting hypothetical posed to the vocational expert. As explained by the Magistrate Judge, although the ALJ included a restriction in his hypothetical that Plaintiff should have limited contact with the public, "[r]eevaluation of the evidence of [Plaintiff's] social functioning may require revision of this hypothetical to include more significant limitations on [Plaintiff's] social functioning in the workplace." (REPORT AND RECOMMENDATION 14.) In turn, the vocational expert's testimony may reflect a significantly eroded or eliminated job base,

---

[4] The Commissioner correctly notes that a moderate limitation in social functioning would have no impact on the step three analysis of whether Plaintiff met the appropriate listing in the Social Security regulations. To meet the paragraph B criteria of Listing 12.04, a claimant must prove two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence and pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.04(B). The Magistrate Judge conceded, and this Court agrees, that the evidence does not show marked limitations in at least two of these domains of functioning.

thereby rendering Plaintiff "disabled" for purposes of benefits.  Accordingly, the Court agrees that the matter must be remanded on this ground.

### B. Whether the REPORT AND RECOMMENDATION Properly Ordered Reconsideration of Ms. Bongiovi's Treatment Notes

In his second objection,[5] the Commissioner challenges the R&R's proposed remand for reconsideration of the treatment notes from Plaintiff's psychotherapist therapist, Jamie Bongiovi.  Defendant argues that the ALJ had no obligation to give Ms. Bongiovi's opinions controlling weight and that, in any event, her opinions were contradicted by the record.

Again, the Court deems this objection meritless and affirms the REPORT AND RECOMMENDATION on this ground.  Under the applicable regulations and jurisprudence, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight."  Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)).  Such deference is accorded especially "when the[ir] opinion[s] reflect[] expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987) (quoting Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984)).  However, only "acceptable medical sources," including licensed physicians or psychologists, can be considered "treating sources" whose medical opinions are entitled to such deference.  Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *1-2 (S.S.A. 2006).  Likewise, only opinions from "acceptable medical sources" can establish the existence of a medically determinable impairment.  Id. at *2.

---

[5] Notably, both the Report and Recommendation and the Objections combine the discussion of the weight accorded to Ms. Bongiovi's treatment notes with the discussion of the ALJ's findings on Plaintiff's ability to concentrate.  As they were raised separately in Plaintiff's Request for Review, however, the Court finds that they merit individual discussion.

Although a licensed psychotherapist does not fall within the definition of an "acceptable medical source," 20 C.F.R. §§ 404.1513(a); 416.913(a), the regulations nevertheless direct the ALJ to use evidence from "other sources," including social workers and psychotherapists, to determine the severity of an impairment and how it affects a claimant's ability to work. Id. at §§ 404.1513(d); 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2. As expressly set forth in Social Security Ruling 06-03p,

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p, 2006 WL 2329939, at *2. The ruling goes on to note that,

> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

Id. at *5. Ultimately, a residual functional capacity determination must be made on the basis of all the evidence before the ALJ. Burnett v. Comm'r of Soc. Security Admin., 220 F.3d 112, 121 (3d Cir. 2000).

In the case at bar, the ALJ considered Ms. Bongiovi's opinions expressed in her October 26, 2006 assessment, but afforded them minimal weight on the grounds that:

> 1) this health provider is not considered an acceptable medical source under SSR 06-03p . . . and cannot establish the existence of a medically determinable impairment; and 2) even using this opinion to evaluate the severity and functional effects, as

permitted under SSR 06-3p, the therapist's mental status examinations were consistently unremarkable and did not disclose[] totally work-preclusive limitations.

(R. 17.)

As found by the Magistrate Judge, however, this determination is not supported by substantial evidence. First, even though Ms. Bongiovi is not an "acceptable medical source," the ALJ failed to acknowledge that she treated Plaintiff every one to two weeks for at least six months, giving her the benefit of long-term observation of Plaintiff's mental condition. Second, contrary to the ALJ's selective interpretation of the treatment notes, Ms. Bongiovi's reports detailed a woman struggling with depression, hopelessness, panic attacks, anxiety, distrust, self-defeating thoughts and insomnia. (Id. at 193-230.) Repeatedly, the therapist referenced Plaintiff's depression, inability to control her anxiety and worry, difficulty concentrating or mind going blank and symptoms of panic including trembling and shaking. (Id.) Aside from a one month period from mid-July to mid-August 2006, Plaintiff showed little improvement in her symptoms and recurrent panic attacks. By October, in fact, Plaintiff showed an increase in depressive thoughts and panic attacks and a decreasing ability to drive to her appointments alone. (Id. at 193-98). Although the ALJ attempted to discredit some of these findings by referencing Ms. Bongiovi's October 24, 2006 notation that Plaintiff had only moderate compliance with the therapy, (id. at 16), the Court notes that every other weekly report from Ms. Bongiovi deemed Plaintiff to have "high" compliance with treatment. (Id. at 193-98.)[6]

---

[6] In his Objections, Defendant contends that Ms. Bongiovi's notes were not credible as they were based entirely on Plaintiff's subjective statements during six months of therapy after Plaintiff became the victim of a sexual assault. According to the record, however, the sexual assault occurred in December 2004 and Plaintiff attended counseling at the Crime Victim's Council from March 2005 to October 2005. (R. 240-41.) Plaintiff did not begin therapy with Ms. Bongiovi until May 2006, one and a half years after the assault. (Id. at 228-30.)

Finally, Ms. Bongiovi's opinions find support in the record from "acceptable medical sources." Neurologist Jeffrey Gould commented that Plaintiff suffered from head tremors, depression and anxiety. (Id. at 112.) Dr. Walters expressly noted that Plaintiff experienced panic attacks, depression and difficulty concentrating. (Id. at 125-29). She diagnosed Plaintiff with severe major depression recurrent with psychotic features, panic disorder and post-traumatic stress disorder, and agreed with Ms. Bongiovi that Plaintiff experienced moderate limitations in areas of both social functioning and concentration, persistence and pace. (Id. at 127-28.) Dr. Barrett concurred that Plaintiff had depression and an anxiety related disorder that caused moderate limitations in activities of daily living, social functioning and concentration, persistence and pace, as well as one to two episodes of decompensation, each of extended duration. (R. 134-44.) Finally, Plaintiff was hospitalized in January of 2006, where she was diagnosed with panic disorder and depressive disorder, and given a Global Assessment of Functioning ("GAF") score of only 40.[7]

In short, the ALJ's decision to blanketly reject Ms. Bongiovi's notations and assessment based primarily on the fact that she is not an "acceptable medical source" is not supported by substantial evidence. While "the ALJ may properly accept some parts of the medical evidence and reject other parts, the ALJ must still consider all the evidence and give some reason for discounting the evidence he rejects." Weber v. Massanari, 156 F. Supp. 2d 475, 483 (E.D. Pa. 2001). Thus, the Court adopts the Magistrate Judge's recommendation that this matter be remanded for additional consideration to be given to Ms. Bongiovi's notes and assessment.

---

[7] A global assessment of functioning score in the range 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000).

### C.     Whether the REPORT AND RECOMMENDATION Properly Ordered Reconsideration of Plaintiff's Ability to Concentrate

The Commissioner next contends that the R&R's proposed remand for reconsideration of Plaintiff's ability to concentrate is faulty. By way of background, Ms. Bongiovi opined, in her assessment, that Plaintiff's "social phobia and depressive symptoms are major barriers to concentration" and that "[a]t present [Plaintiff] is unable to focus in a work situation." (R. 232.) The ALJ nonetheless determined that Plaintiff had only moderate difficulties in maintaining concentration, persistence or pace.[8] (Id. at 15.) In his ensuing hypothetical to the vocational expert, the ALJ limited Plaintiff to work at any exertional level that did not involve detailed instructions and only limited contact with the public. (Id. at 15, 262.) Reviewing a challenge to this finding, the Magistrate Judge determined that the ALJ improperly disregarded both Ms. Bongiovi's notes, as well as other evidence in the record, which supported a greater limitation in Plaintiff's concentration than the ALJ imposed. (REPORT AND RECOMMENDATION 15-18.) The Commissioner now argues that regardless of the weight given to Ms. Bongiovi's report, substantial other evidence of record supports the ALJ's finding of a moderate limitation in this area.

This Court agrees in part with the Commissioner. Although Ms. Bongiovi stated that Plaintiff suffered "major barriers to concentration," every other medical source to opine on the issue found Plaintiff to have nothing more than a moderate limitation in concentration, persistence and pace. (See, e.g., R. 97 (psychiatrist Carlos Velas noting Plaintiff's cognitive memory intact); id. at 111 (neurologist Jeffrey Gould noting Plaintiff's attention span and concentration was normal); id. at 128 (Clova Walters, M.D. finding that Plaintiff has moderate limitation in ability to understand

---

[8] Concentration, persistence or pace refers to a claimant's "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

and remember short simple instructions and understand and carry out detailed instruction);[9] id. at 144 (John Barrett, Ph.D., imposing moderate limitation in Plaintiff's concentration, persistence and pace).) Nothing in the record evidences a marked or extreme limitation in this domain.

Nonetheless, the ALJ's hypothetical to the vocational expert fails in another crucial aspect. In Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004), the Third Circuit expressly held that a hypothetical question limiting a claimant to simple, repetitive, one to two step tasks is not sufficient to encompass a claimant's impairments where the ALJ has found that he or she "often" suffered from deficiencies in concentration, persistence and pace.[10] Id. at 554. Other courts within the Third Circuit have similarly refused to uphold an ALJ's ruling where a claimant either "often" had deficiencies or had "moderate" deficiencies in concentration, persistence or pace, and where the ALJ only limited the claimant to non-detailed, simple and routine and/or low stress work. See, e.g., Deitz v. Astrue, Civ. A. No. 06-5053, 2008 WL 577000, at *11 (D.N.J. Feb. 29, 2008) (finding error warranting remand in ALJ's hypothetical that limited claimant to low stress jobs but failed to include moderate limitations in concentration); Barry v. Astrue, Civ. A. No. 05-1825, 2007 WL 2022085, at *4 (E.D. Pa. July 9, 2007) (finding that hypothetical restriction to simple, low stress,

---

[9] Although not entirely clear, the Magistrate Judge seems to suggest that Dr. Walters assessed Plaintiff with a more than moderate limitation in concentration, persistence and pace since she imposed a moderate limitation on Plaintiff's ability to understand simple instructions. (REPORT AND RECOMMENDATION 18.) Dr. Walters's mental status examination, however, evidences no marked or severe limitation in concentration. ®. at 127.) Further, Dr. Walters deemed Plaintiff only slightly limited in her ability to carry out short and simple instructions and make judgments on simple work-related decisions. (Id. at 128.) Taking these items cumulatively, the Court does not read Dr. Walters's report to impose any more than a moderate limitation in concentration, persistence and pace.

[10] See Colon v. Barnhart, 424 F. Supp. 2d 805, 811 (E.D. Pa. 2006) ("A finding of 'often' under the old scale therefore roughly equates to a 'moderate' deficiency."); Dynko v. Barnhart, Civ. A. No. 03-3222, 2004 WL 2612260, at *5 n.34 (E.D. Pa. Nov. 16, 2004) (holding that "'often' and 'moderate' fall on the same point on a five-point continuum, and therefore can be considered equivalent findings").

one-to two-step tasks, involving limited contact with the public and co-workers did not adequately encompass credibly established moderate limitations in concentration, persistence and pace); Steininger v. Barnhart, Civ. A. No. 04-5383, 2005 WL 2077375 , at *3-4 (E.D. Pa. Apr. 24, 2005) (limitation to "simple repetitive tasks" and "only occasional contact with the public and coworkers" does not sufficiently incorporate the ALJ's finding that plaintiff had "a moderate degree of limitation in the concentration, persistence and pace area of functioning.")

As noted above, two physicians and one treating psychotherapist, in this case, found that Plaintiff had moderate limitations in her ability to understand and remember and/or carry out short and simple instructions. The ALJ himself agreed that Plaintiff suffered at least a moderate limitation in concentration, persistence and pace. ®. 15.) Yet, when formulating both Plaintiff's residual functional capacity and the hypothetical to the vocational expert, the ALJ qualified the job base by eliminating only work involving "detailed instructions." (Id. at 262.) Our jurisprudence makes clear that such a hypothetical does not sufficiently incorporate plaintiff's medically established limitations. Ramirez, 372 F.3d at 554. In turn, the vocational expert's answer cannot serve as substantial evidence. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). As proposed by the Magistrate Judge, the Court thus remands the case on this ground.

> D. **Whether the REPORT AND RECOMMENDATION Properly Ordered Reconsideration of Plaintiff's Tremors**

The Commissioner's fourth objection challenges the R&R's remand for further consideration of Plaintiff's head and neck tremors. In his decision, the ALJ briefly acknowledged that Plaintiff experienced panic attacks and tremors since middle school, yet failed to include this limitation either in the hypothetical to the vocational expert or in the ultimate residual functional capacity assessment. ®. 15.) The Magistrate Judge found that this omission deprived the ALJ's

decision of the support of substantial evidence and remanded so that the ALJ could "consider the effect of both [Plaintiff's] tremors and her anxiety disorders on her fine motor skills, and include such limitations in evaluating [Plaintiff's residual functional capacity] and her vocational base." (REPORT AND RECOMMENDATION 20, n.6.)

The Commissioner now argues that such a remand is unwarranted. Specifically, he contends that records from neurologist Jeffrey Gould reveal that Plaintiff's tremors were not the result of any abnormal neurological functioning, but rather were caused by Plaintiff's anxiety. (Def.'s Br. 11 (citing R. 111-12).) As the ALJ accommodated the symptoms of anxiety by eliminating situations that Plaintiff identified as triggering panic attacks, the Commissioner argues that remand for consideration of the extent that the tremors affected her fine motor coordination is unwarranted. Id.

Again, the Court agrees with the Magistrate Judge. As noted above, the law is well-established that in order for a vocational expert's answer to a hypothetical question to be considered substantial evidence, the question must reflect all of a claimant's limitations that are supported by the record. Chrupcala, 829 F.2d at 1276. The Third Circuit has emphasized that, "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). The law does "not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant," but does require that the hypothetical "accurately convey to the vocational expert all of a claimant's *credibly established limitations*." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (quotations omitted) (emphasis in original). Where the record contains medically undisputed evidence of a specific impairment not included in the hypothetical, the expert's response is not considered

substantial evidence. Podedworny, 745 F.2d at 218.

In this case, the record is replete with Plaintiff's complaints of head tremors. During a psychiatric examination at Lehigh Valley Community Mental Health Center, in August of 2003, Plaintiff reported "head jerks" and shaking. ®. 88.) At an appointment with Jolly B. Canias, M.D. in October of 2004, Plaintiff complained of a head tremor over the past five years. (Id. at 107.) Although neurologist Dr. Gould found no abnormalities, he clearly diagnosed Plaintiff with a head tremor exacerbated by anxiety. (Id. at 110-12.) Dr. Walters observed, in April of 2005, that, during the examination, Plaintiff experienced "significant head and neck tremors" where the "shake at times [was] uncontrollable." (Id. at 127.) In January of 2006, Plaintiff was hospitalized for an anxiety attack precipitated by an incessant head twitch. (Id. at 179.) Throughout the remainder of 2006, Plaintiff repeatedly reported to Ms. Bongiovi head tremors and/or shaking uncontrollably in public. (Id. at 199, 201, 203, 205, 207, 211, 217, 223, 225, 228.) Finally, during the administrative hearing, Plaintiff testified that she has a persistent tremor that requires her to be constantly holding her head. (Id. at 248-49, 255.) She explained that she cannot write a check in public, get a haircut or go to a dentist because her head shakes too much. (Id. at 252, 257.)

Given this credibly established limitation, the ALJ erred by not including it in the hypothetical to the vocational expert. Although the tremors are apparently caused by her anxiety disorder, nothing in the record suggests that the work restrictions imposed by the ALJ would eliminate these tremors or their resulting physical limitations. Accordingly, the Court agrees with the REPORT AND RECOMMENDATION that, on remand, the ALJ should inquire into whether and how the addition of such an impairment would erode the job base identified by the vocational expert.

      **E.**      **Whether the REPORT AND RECOMMENDATION Properly Ordered Reconsideration of Dr. Walters's Diagnosis of Post-Traumatic Stress Disorder**

Defendant's final objection asserts that remand for consideration of Dr. Walters's diagnosis of post-traumatic stress disorder is unwarranted. The Court sustains this objection.

Social Security regulations are concerned not with a specific diagnosis, but rather what the functional limitations resulting from that impairment are and how they impact an individual's ability to perform in the workplace. 20 C.F.R. §§ 404.1545, 416.945. In this case, Dr. Walters diagnosed Plaintiff with major depression, recurrent, severe with psychotic features; panic disorder; post-traumatic stress disorder; and alcohol abuse, episodic. ®. 127.)  Although the residual functional capacity assessment by the ALJ did not properly encompass all of Plaintiff's limitations, the missing limitations are not specifically attributable to Plaintiff's post-traumatic stress disorder. Absent some indication of what limitations resulted solely and directly from that impairment, the ALJ need not undertake any additional consideration of this diagnosis.[11]

## IV.     CONCLUSION

For all of the reasons set forth above, this Court approves the Report and Recommendation issued by the Magistrate Judge suggesting that the case be remanded to the ALJ for further proceedings. The Court, however, modifies the Report and Recommendation with respect to the bases for that remand and orders that the ALJ, on remand, shall conduct further proceedings to address the errors identified in this opinion.

---

[11] The REPORT AND RECOMMENDATION is not entirely clear on this issue. Although the heading on this argument is entitled "Post Traumatic Stress Syndrome," the ensuing discussion appears to again critique the ALJ's omission of (1) a greater limitation on Plaintiff's concentration and (2) restrictions resulting from Plaintiff's head tremor. To the extent the REPORT AND RECOMMENDATION orders remand for reconsideration of the diagnosis of post-traumatic stress disorder, the objection is sustained. To the extent, however, that the REPORT AND RECOMMENDATION merely reiterates that the ALJ must reconsider limitations on Plaintiff's concentration and the effect of her head tremors, the objections is overruled.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRYSTAL R. KEIDERLING | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 07-2237 |
| MICHAEL J. ASTRUE, COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**ORDER**

AND NOW, this *20th* day of *May*, 2008, upon consideration of Plaintiff's Request for Review (Docket No. 5), Defendant's Response to Plaintiff's Request for Review (Docket No. 6), the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey (Docket No. 8) and Plaintiff's Objections thereto (Docket No. 9), and upon careful review of the entire record, it is hereby **ORDERED**, as follows:

1. Plaintiff's Objections to the Report and Recommendation are **SUSTAINED IN PART** and **OVERRULED IN PART**;

2. Plaintiff's Request for Review is **GRANTED** insofar as Plaintiff requests that the matter be vacated and remanded and **DENIED** insofar as Plaintiff requests reversal of the Commissioner's decision;

3. The matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the discussion set forth in the Court's Memorandum accompanying this Order; and

4. This case shall be **CLOSED** for statistical purposes.

BY THE COURT:

*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER,         S.J.